UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. **06-21457-CIV-ALTONAGA/Brown**

PAUL BABINEAU, KENNY BOSELY,
LARRY HORTON, DUANE JOYCE, '
individuals, on behalf of themselves
and all others similarly situated,

        Plaintiffs,

v.

Federal Express Corporation,

        Defendant.

_____/

**CLASS ACTION**

**MOTION FOR CLASS CERTIFICATION**

## I. INTRODUCTION

This case arises from violations of the wage and hour laws. Defendant FedEx established a corporate policy of willfully failing to pay for on the clock services of hourly nonexempt employees. Plaintiffs plead causes of action for: (1) breach of contract, and (2) *quantum meruit*.

First, plaintiffs contend that FedEx breached its contractual agreement to pay for all on the clock time worked by members of the class by establishing a corporate policy of routinely failing to pay for services of hourly employees. Second, plaintiffs allege that FedEx has derived a benefit based upon the labor of its employees for which it has refused to pay and that it is inequitable for FedEx to retain the benefit without paying fair value.

The proposed class consists of: All employees of defendant paid on an hourly basis as nonexempt employees ("hourly employees"), who were employed in the state of Florida, from the maximum time period preceding the filing of this complaint, as permitted by the statute of limitation, until such time as the Class period closes. (Complaint ¶ 14.) The class includes couriers, courier/handlers and service agents, and any other non-exempt employee who is, or was, required during the class period to punch in and out on a manual time clock, but was paid only from scheduled start time to scheduled end time. The class also includes those employees who worked during unpaid breaks.

Plaintiffs present direct evidence that the practices complained of are uniform throughout FedEx, including FedEx Florida operations. Further, the method of proving the claims is the same for all class members. The affidavit of expert statistician Dr. Richard Drogin, attached as exhibit H to the Affidavit of Gwen Freeman in Support of Babineau Class Certification, sets forth the results of his analysis of millions of points of electronic data provided by FedEx, showing that in hundreds of thousands of instances, FedEx employees worked during unpaid periods.

Plaintiffs also submit direct evidence in the form of the affidavits of plaintiffs Paul Babineau, Kenny Bosley, and Larry Horton, as well as affidavits obtained in prior litigation entitled *Clausnitzer v. Federal Express Corporation,* 248 F.R.D. 647 (S.D. Fla. 2008). Due to the abbreviated time period allowed for discovery in this action by the Court's July 22, 2008, scheduling order, plaintiff has propounded discovery but has yet to receive responses. (Freeman Aff. ¶ 3.) Accordingly, in support of this motion plaintiffs submit relevant evidence developed by discovery in the *Clausnitzer* action. Plaintiffs also submit overwhelming evidence, developed

in a previous case filed in California, of a uniform, documented failure to pay hourly employees for hours worked. The illicit practices which were documented in California are identical to those visited on FedEx employees in all other states, including Florida, because FedEx admits that all of its relevant policies and procedures are the same nationwide. (Jardini Affidavit in Support of Class Certification in the Case of *Clausnitzer v. Federal Express Corporation,* attached as exhibit H to Freeman Affidavit (bates KPC00032-89) "Jardini-*Clausnitzer* Aff.", ¶¶ 25-51.) The nationwide data obtained in *Clausnitzer* confirmed the California specific data obtained in *Foster*, and is equally applicable in Florida.

While plaintiffs utilize discovery from the *Clausnitzer* case, which was denied class certification by this Court on February 28, 2008, this action differs from *Clausnitzer* in key respects, allowing for class certification. In *Clausnitzer,* plaintiffs sought to represent a nationwide "breach of contract" class. Class certification was denied on the basis that: (1) the class definition was inadequate; (2) the predominance requirement for class certification was not satisfied; and (3) the superiority requirement for certification was not satisfied. As explained below, plaintiffs in this case directly address and satisfy the Court's concerns articulated in *Clausnitzer*. Thus, class certification here is appropriate.

In this case, a new group of plaintiffs seek to represent a Florida only class, implicating only Florida law and resolving the Court's concerns regarding potential differences in state laws, yielding a refined and more manageable class. Further, new principles are raised in the breach of contract action that were not considered previously. For instance, the employment application contract incorporates the Policies and Procedures Manual which obligates FedEx to pay for all hours worked according to Federal and State laws, including 29 C.F.R. §§ 4.178, 778.223, 785.11, 785.13, and 778.223 discussed at length below. In addition, unlike the *Clausnitzer* action which sought only certification for the breach of contract claim, plaintiffs now seeks class certification on the *quantum meruit* claim as well.

## II.    STATEMENT OF FACTS

All hourly FedEx employees, including those located within the state of Florida, perform services for FedEx pursuant to a written employment contract, consisting of the written employment application (constituting terms protecting FedEx during the application process) and the FedEx Employee Handbook, which sets forth respective rights and mutual duties of the hourly employees and FedEx. (Jardini-*Clausnitzer* Aff., ¶ 221; Ex. 47, 48.) It is "key corporate

policy" of FedEx to compensate hourly employees for all time worked, and the Employee Handbook so states. (Jardini- *Clausnitzer* Aff., ¶ 221; Ex. 45 p. 550; 47, p. 591; Freeman Aff. exhibit G.) FedEx also agrees to pay a premium hourly rate for all overtime hours. (Jardini- *Clausnitzer* Aff., ¶ 221; Ex. 47, p. 607.)

In breach of this agreement, and as a corporatewide policy, FedEx hourly employees are regularly **not** paid for all time worked. This has been consistently documented because class members are required to punch a time clock when arriving for work. FedEx admits, however, that it did not begin to pay its employees when they punched in, but rather from a later designated "scheduled start time." Similarly, the documentary evidence produced by FedEx, establishes that FedEx employees are regularly not paid for time worked at the end of the day after the "scheduled end time," but before they punch out. FedEx employees are required to continue to work after the scheduled end time in order to accomplish all of the assigned tasks. (Jardini- *Clausnitzer* Aff., ¶¶ 42-149; Drogin Affidavit in Support of Class Certification in the Case of *Clausnitzer v. Federal Express Corporation,* attached as exhibit H to Freeman Affidavit (bates KPC00090-111.) "Drogin- *Clausnitzer* Aff.", ¶¶ 4-6.) Discovery has likewise revealed that FedEx employees frequently work through unpaid breaks. (Jardini- *Clausnitzer* Aff., ¶¶ 150-213; Drogin- *Clausnitzer* Aff., ¶ 7.)

These practices were long-standing and uniform, are encouraged and rewarded by FedEx, and serve as an integral part of FedEx's budgetary planning for all of its locations. (Jardini- *Clausnitzer* Aff., ¶¶ 26-41.) For example, on December 8, 2004, a California Class of approximately 13,000 such FedEx employees was certified in *Foster v. FedEx.* On February 24, 2006, *Foster* settled for payment by FedEx of $30 million. (Jardini- *Clausnitzer* Aff., ¶ 4.) Claim forms were sent to all class members, and approximately 50% of the class has made a claim. (Jardini- *Clausnitzer* Aff., ¶ 217.)    In a tacit admission of liability and acknowledgment that the problems identified in California occurred nationwide, in April of 2006, immediately after the *Foster* settlement was reached, FedEx instituted a global change, such that employees were thereafter paid from the time they punched in. Also efforts were made to prevent employees from working during unpaid breaks. (Jardini- *Clausnitzer* Aff., ¶ 219.)

**A.**    **A Valid Contract Exists Under Florida Law Between Plaintiffs and FedEx**:

Plaintiffs clearly have a valid, class-wide breach of contract claim under Florida law. Under Florida law, an employment manual may constitute a contract if it "contain[s] specific

language which expresses the parties' explicit mutual agreement that the manual constitutes a separate employment contract." *Quaker Oats Co. v. Jewell*, 818 So.2d 574, 576-77 (Fla. 5th DCA 2002). FedEx required employees to execute documents which expressly integrated the employment manual into the terms of their employment contract. (Freeman Aff. ¶ 4, exhibit F.)

In the *Clausnitzer* action, FedEx argued that a contractual provision superseded the statute of limitations. However, Florida Statutes, § 95.03 provides that "[a]ny provision in a contract fixing the period of time within which an action arising out of the contract may be begun at a time less than that provided by the applicable statute of limitations is void." *Clausnitzer v. Federal Express Corp.*, 248 F.R.D. 647, 655 (S.D. Fla. 2008).

1.    **Documents Produced by FedEx Prove Contract Wherein FedEx Promises to Pay For All Hours Worked**: FedEx requires Florida employee applicants to execute written agreements, which define the contract and provide its terms. The contract, attached as exhibit F to the Freeman Affidavit in Support of Class Certification is entitled:

# AGREEMENT

## Important

### Please read and sign below

The contract importantly provides as follows:
>     That all terms and conditions of my employment except to the extent covered specifically by this contract or any other valid contract between company and me (or someone legally acting on my behalf) shall be determined and governed by Companies' Policies and Procedures Manual as same may be amended (from time to time hereafter a copy of which together will all amendments shall at all times be available to me). (Emphasis added.)

Therefore, FedEx expressly incorporates its Manual into its contract with Florida employees. FedEx requires the employees to execute disclaimers to the extent that the Policies and Procedures Manual does not create a contract for a term such that the at-will nature of the relationship is maintained. This disclaimer does not affect the above express contractual language.

2.    **FedEx Explicitly Promises to Pay For All Hours Worked**: The Policies and Procedures Manual, the Employee Handbook and the "People Manual" each contain the promise that FedEx will pay for all time worked. Those documents all state:

513120.2  08000/00888

"**It is the policy of FedEx Express to compensate employees for all time worked in accordance with applicable state and federal laws**."

(Emphasis added.)  (Employee Handbook p. 32, exhibit G to Freeman Aff.)

FedEx contracts with its employees to follow all state and federal laws in paying for hours worked.  "Hours worked" are defined, under federal law, as all work "suffered or permitted" by the employer.  (29 C.F.R. § 4.178.)  FedEx required its employees to be present and to punch in on the time clock.  **Importantly, FedEx instructs its employees that the time cards must "always record the actual hours worked."**  (Employee Handbook p. 33, exhibit G to Freeman Aff.)  But FedEx admits it did not pay for any time before the scheduled start time. After punching in, and before punching out, the employees were under the control and management of FedEx, and were, as FedEx recognizes in its own documents, "actually work[ing]."  Regardless of any specific tasks undertaken by the employee during that time, an employee under the control of an employer, who is "on the clock" according to the employer's own procedures and regulations,  must be paid under the applicable law, which FedEx has adopted in its contract with its employees, and is obliged to follow.

    3.    **FedEx Has Obligated Itself To Follow Federal And Florida Law Which Requires Payment For All "Hours Worked"**:  FedEx, by its employment application contract which incorporates the Policies and Procedures Manual, has obligated itself to pay for all hours worked according to state and federal law.  Federal law defines the work to be paid.  29 C.F.R. § 4.178 defines hours worked as follows:

> In general, the hours worked by an employee include <u>all periods in which the employee is suffered or permitted to work whether or not required to do so, at all time during which the employee is to be required to be on duty or to be on the employer's premises</u> or to be at a prescribed workplace.  (Emphasis added.)

In the begin-shift period, before April 1, 2006, FedEx employees were required to punch in on the time clock.  FedEx admits that this procedure was adopted to ensure the presence of the employees on the premises.  Therefore, the employee is "on the employer's premises," and "at a prescribed workplace."  <u>The time so spent constitutes hours worked</u> and must be compensated.

29 C.F.R. section 778.223 provides, as follows:

> Under the Act an employee must be compensated for all hours worked.

As a general rule, the term "hours worked" will include: (a) all time during which

an employee is required to be on duty or to be on the employer's premises or at a
prescribed workplace and (b) all time during which an employee is suffered or
permitted to work whether or not he is required to do so. <u>Thus, working time is
not limited to the hours spent in active productive labor, but includes time given
by the employee to the employer *even though part of the time may be spent in
idleness*</u>. (Emphasis added.)

Therefore, FedEx may not escape its obligation to pay for this time, by arguing that
employees are idle or unproductive, such as waiting in the break room or drinking coffee. Even
such "idleness" must be compensated under federal law. FedEx is obliged by law to pay for
work even if it has not requested that work and even if it has forbidden that work.

29 C.F.R. section 785.11 states in this regard:

Work not requested but suffered or permitted is work time. <u>For example,
an employee may voluntarily continue to work at the end of the shift</u>. He may be
a piece worker, he may desire to finish an assigned task or he may wish to correct
errors, paste work tickets, prepare time reports or other records. <u>The reason is
immaterial</u>. The employer knows or has reason to believe that he is continuing to
work and <u>the time is working time</u>. (Citations omitted.) (Emphasis added.)

If FedEx does not wish its employees to be on the premises or to work, it is
management's duty to prevent that work. If the work occurs, as defined above, it must be paid.
As quoted above, 29 C.F.R. Section 785.13 provides in this regard:

<u>In all such cases it is the duty of the management to exercise its control
and see that the work is not performed if it does not want it to be performed. It
cannot sit back and accept the benefits without compensating for them. The mere
promulgation of a rule against such work is not enough</u>. Management has the
power to enforce the rule and must make every effort to do. (Emphasis added.)

Accordingly, it is no defense that an employee who is required to be "on the premises" or
at a "prescribed workplace" may not effectively fulfill work functions. Under 29 C.F.R. section
778.223, the pre and post-shift time spent by FedEx employees constitutes "hours worked."

**B.    The Principles Of *Quantum Meruit* Support The Requested Relief**: FedEx has
accepted free labor for years, which, at minimum, merits a *quantum meruit* claim for Florida
employees. As articulated by this Court in *Posely v. Eckerd Corp.* 433 F.Supp.2d 1287

513120.2  08000/00888

(S.D.Fla., 2006), the elements of a cause of action for *quantum meruit* (quasi contract) are: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it.  In *Posely*, this Court explained: "a claim of *quantum meruit* is synonymous with a claim for a contract *implied in law* …a legal fiction, an obligation created by the law without regard to the parties' expression of assent by their words or conduct.  The fiction was adopted to provide a remedy where one party was unjustly enriched, where that party received a benefit under circumstances that made it unjust to retain it without giving compensation." *Id.* at 1314, citing *Hull & Company, Inc. v. Thomas*, 834 So.2d 904, 907 (Fla. 4th DCA 2003) quoting *Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co.* 695 So.2d 383, 386 (Fla. 4th DCA 1997.) (Emphasis in original.)

1.    **Plaintiffs Have Conferred a Benefit on FedEx**:  FedEx has derived a benefit based upon the labor of its employees for which it has refused to pay.  Both in the begin-shift and end-shift periods, and during unpaid breaks, FedEx employees have been shown to be working.  As readily demonstrated from FedEx records, this occurs on a wholesale basis.  As much as 16 minutes per day on average across all employees, has been worked by FedEx employees in the begin shift and end shift periods.  Further, Drogin's testimony establishes that fully 23% of unpaid breaks contain work events.  This time has a value of tens of millions of dollars in Florida alone over the class period.

2.    **FedEx Has Knowledge of the Benefit**:  FedEx meticulously monitored employee's time and productivity, including requiring employees to manually clock in and out, as well as the use of electronic devises known as Trackers, SuperTrackers and PowerPads (collectively "Tracker.")  Throughout the day employees manually enter task codes into the Tracker to correspond to individual activities performed at particular times.  Activities recorded include when the employee began work, began and finished a break, and ended work for the day.  Employees also used the Tracker to input stops and scan packages at pick-ups and deliveries.  This data is not only used to record employee work time, but also the location of various FedEx packages in transit.  (Jardini-*Clausnitzer* Aff., ¶¶ 45-46.)  Therefore, FedEx maintains detailed and accurate records of employee activity.  <u>These records show that employees regularly and frequently log work events while technically off-the-clock, before and after their scheduled</u>

shifts, and during their breaks. Because this information is in electronic form, it is readily accessible to FedEx. Investigation conducted by FedEx itself proves that FedEx has knowledge of employees working off the clock.

FedEx is required to take affirmative steps to ensure that work is not performed off the clock. 29 C.F.R. Section 785.13 provides that it is "the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do." FedEx has contracted with all its employees to follow all federal and state laws, including 29 C.F.R. § 785.13, and related sections.

**3.    FedEx Has Accepted and Retained the Benefit Conferred**: In allowing its employees to frequently work off the clock, and subsequently refusing to pay employees for their labor, FedEx has accepted and retained the benefit of millions of unpaid man-hours.

**4.    The Circumstances Are Such That it Would be Inequitable For FedEx to Retain the Benefit Without Paying Fair Value For It**: Quoting *Commerce Partnership*, 695 So.2d at 387, this Court explained that a "*quantum meruit* action may lie 'where there is no enforceable express or implied in fact contract but where the defendant has received something of value.'" *Posely, supra,* 433 F.Supp.2d at 1314. (Emphasis in original.) Plaintiffs have a valid cause of action for *quantum meruit* under Florida law because plaintiffs conferred a benefit upon FedEx by working, FedEx was aware of this through its own tracking and time-keeping technologies, FedEx accepted and retained the benefit conferred by continuously and systematically failing to pay its employees for this time, and it is unfair and inequitable for FedEx to retain the benefit of its employees' labor without paying fair value for it.

### III.    LEGAL STANDARD FOR CLASS CERTIFICATION

A court may certify a class if the plaintiffs demonstrate that all of the requirements of Federal Rule of Civil Procedure 23(a) are satisfied, and at least one of the requirements of Rule 23(b) is satisfied. Rule 23(a) requires that four factors must be met: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a). After satisfying Rule 23(a), plaintiffs must establish one or more of the following grounds for maintaining the suit as a class action pursuant to Rule 23(b): (1) there is a risk of substantial prejudice from separate actions; (2) declaratory or injunctive relief benefiting the class as a

whole would be appropriate; or (3) common questions of law or fact predominate and the class action is superior to other available methods of adjudication. *See* Fed. R. Civ. P. 23(b)(1-3).

Class action suits "promote judicial economy and efficiency by avoiding multiple adjudications of the same issues. *Grillasca v. Hess Corporation*, 2007 WL 2121726 at pg 3. (M.D.Fla.) *citing General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 159 (1982). "Class actions afford aggrieved persons a remedy when it is not economically feasible to obtain relief through the traditional framework of multiple individual damage actions." *Id. citing Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980). "From the Defendant's perspective, class action provides a single proceeding in which to determine the merits of the plaintiff's claims and, therefore, may protect defendants from repeated and potentially inconsistent adjudications. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 402-403 (1980).

## IV.    PLAINTIFFS DEMONSTRATE EACH REQUIRED ELEMENT OF RULE 23(a)

**A.**    **Numerosity**: Joinder of all current and prior FedEx employees located within the state of Florida would be impracticable, if not impossible. *E.E.O.C. v. Printing Indus. Of Metro. Washington, D.C., Inc.,* 92 F.R.D. 51, 53 (D.D.C. 1981). The number of putative class members is in the thousands. (Jardini-*Clausnitzer* Aff., ¶ 216.) Further, the definition of the class herein is sufficiently precise in that it is administratively feasible for the court to determine whether a particular individual is or is not a member of the proposed class.

**B.**    **Commonality**: Common issues of law and fact with regard to the breach of contract and *quantum meruit* claims exist for the proposed Florida only class, which directly addresses the Court's concern as articulated in the *Clausnitzer* decision with respect to a nationwide class and possible variances in state law. *Clausntizer, supra*, 248 F.R.D. at 658. This Court found that the commonality requirement was satisfied with the proposed *Clausnitzer* nationwide class. *Id.* at 656. As the issues, claims and facts remain the same in the instant proposed Florida class, the commonality requirement is satisfied.

The legal aspects of whether FedEx breached its contract with its hourly employees are the same for all Florida class members. As discussed above, a valid contract exists between plaintiffs and FedEx under Florida law. Plaintiffs will show that the class members worked on an hourly basis and thus performed their part of the bargain. The duty of FedEx to pay for all of that work then came due. Failure to pay for all time worked, as promised, is nonperformance on the part of FedEx and constitutes the breach of which plaintiffs complain. Similarly, the legal

aspects of whether FedEx is liable to plaintiffs based on *quantum meruit* is the same for all Florida employees. FedEx has accepted free labor for years, and it would be inequitable for FedEx to retain the benefit of such labor without paying fair value for it.

The primary issue in this case, encompassing both the breach of contract and *quantum meruit* claims, is the <u>factual issue</u> of whether FedEx has a companywide policy of not paying for all time worked from its hourly work force. This factual issue is not only common to all class members but is conveniently subject to a common method of proof. FedEx maintains electronic data as to each employee's workday, including the scheduled start and end times and the duration of the breaks for which the employee was not paid. FedEx also maintains electronic data concerning each stop or pickup by an employee and the times each package was handled by any employee. As set forth more fully below, Dr. Drogin compared a representative sample of employee time cards to the electronic data on unpaid breaks by each employee and demonstrated that employees regularly work before and after the scheduled start and end times. Review of that data for the time of unpaid breaks and electronic comparison to available package handling and stop data shows that FedEx employees frequently and regularly work during their unpaid breaks. Since the statistical and sampling evidence on which plaintiffs rely is common to the class, the inferences drawn from this evidence will also be common to all class members. *See Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 339-40 (1977).

1.      <u>**Plaintiffs Can Show Significant Evidence of Companywide Practices and Policies**</u>:  Where plaintiffs can show significant evidence of companywide corporate practices and policies, plaintiffs have satisfied the commonality requirement for class certification. *Dukes v. Wal-Mart Stores, Inc.*, 2007 DJDAR 1665 (9th Cir. Feb. 6, 2007); *Morgan v. United Parcel Service, Inc.,* 169 F.R.D. 349, 356 (E.D. Mo. 1996).

Employee wage costs are the largest single budgetary item for FedEx. (Jardini-*Clausnitzer* Aff., ¶26.)  To contain these costs FedEx has retained human studies engineers to calculate the least amount of time for each discrete task or activity on the job for courier and service agent employees. These ideals are then set as maximum time allotments for the task. The managers and employees are advised of the time allotted to each task, the payroll budgets for each location are set based on these allotments, and managers are rewarded for coming in under budget. (Jardini-*Clausnitzer* Aff., ¶¶ 27-41.)  But the time allotments, upon which the budgets are based, reflect the time it takes to perform tasks under *optimal* conditions, do not

accommodate the variability of real life, and are frequently inadequate to complete the task. This is true for all FedEx Florida locations. (Jardini-*Clausnitzer* Aff., ¶¶ 30, 65, 70, 72-74, 78.)

FedEx requires courier, courier/handler and service agent employees, and other hourly employees, to keep time in three ways. (Jardini-*Clausnitzer* Aff., ¶ 77.) First the employees physically punch in on a time card or time sheet, a traditional time clock punch-in system. Typically, employees punch in as soon as they arrive at the location where they are scheduled to work, in uniform, subject to FedEx control and management direction and cannot leave. (Jardini-*Clausnitzer* Aff., ¶¶ 42, 56.) Second, the employees manually write on the time card the time codes for each task performed, and the start and end time for that task. A scheduled and actual start and end time are all separately noted. Each task for which time is allotted is given a task or activity code. (Jardini-*Clausnitzer* Aff., ¶¶ 43-45.) Third, employees are required to carry a tracker device, which has a keypad, on which the employee also enters the task code, again reflecting the time of that task. The tracker device is also used by the employees to scan packages upon pick up and delivery, allowing FedEx to track both the employees and the packages, at each point along the route. (Jardini-*Clausnitzer* Aff., ¶¶ 45-46.)

Once the hourly employee punches in on the time clock, they are expected to, and do, perform job functions for FedEx. But the employees have not been paid for this time. (Jardini-*Clausnitzer* Aff., ¶¶ 53-88.) For example, couriers must locate and procure necessary equipment and conduct pretrip tasks, in order to be ready to launch at the appointed time. This is expected by FedEx managers and is necessary in order to meet productivity demands. The FedEx time budget, however, allowed for no time to procure equipment prior to April 2006. (Jardini-*Clausnitzer* Aff., ¶ 53.) Similarly, couriers, at the end of the day, have to complete paperwork, return undeliverable packages and process data. (Jardini-*Clausnitzer* Aff., ¶¶ 69, 74, 88; Ex. 2, ¶ 7; Ex. 6, ¶ 9.) Service agents are obligated to check the location three times to make sure that all packages have been accounted for; restock the customer counter, port the bags, check the package to tabs, count the cash and checks; run a cash report; account for any discrepancies; prepare reports; put away the trackers. Customer service agents frequently cannot complete all of the closing procedure tasks in the allotted time as the last half hour of the day typically accounts for at least half of the packages that come into that location on a given day. These packages must be ready for the couriers by ten minutes after closing, which entails processing, bagging, and physically getting the packages to the couriers. Customers, including late arrivals,

must also be attended to. (Jardini-*Clausnitzer* Aff., ¶ 6; Ex. 19, pp. 266-267; Ex. 28, ¶¶8, 9; Ex. 31, ¶¶18-19.) Numerous witnesses have testified that service agents work past the scheduled end time. (Jardini-*Clausnitzer* Aff., ¶¶ 57, 59-62, 65-67, Freeman Aff. ¶ 2.) And as the California court recognized, "a non-exempt employee does not stay after the end of their shift on the clock performing non-work activities." (Jardini-*Clausnitzer* Aff., ¶¶ 4, Ex. 8.)[1]

      2.    **Declaration Testimony And Statistical Evidence Proves That Florida Employees Are Not Paid For All Time Worked**: The declarations of Mr. Clausnitzer, a FedEx employee of over 23 years, Ms. Kennedy, and Mr. Bost establish that in Florida, employees worked after punching in and before the scheduled start time, and after the scheduled end time, but before punching out, without getting paid. Service agent employees also routinely perform tasks, such as setting up the service center for the day, after they punch in but before scheduled start time. FedEx managers look the other way. (Jardini-*Clausnitzer* Aff., ¶¶ 55, 73.)

      The named plaintiff, Mr. Babineau, has worked for FedEx for twenty-five years, eighteen within the state of Florida. (Babineau Aff. ¶ 2, attached as exhibit A to Freeman Aff.) Mr. Babineau testifies that prior to April 1, 2006, "it was FedEx policy not to pay hourly employees from the time we punched in on the time clock. Rather, I, as well as other employees, were paid only from the time I logged into the computer system at Fed Ex." (Babineau Aff. ¶ 8.) During this unpaid but on-the-clock time pre and post-shift, Mr. Babineau testified that he was "ready to work and available to perform [his] duties. If, as sometimes happens, [he] was given a directive by management, [he] followed it, as [he] was required to do." (Babineau Aff. ¶ 11.)

      Plaintiff Bosley worked for FedEx in Florida for twenty-three years. (Bosley Aff. ¶ 2, attached as exhibit B to Freeman Aff.) Mr. Bosley testified that he also worked during the on-the-clock pre and post shift periods, as well as during unpaid breaks. (Bosley Aff. ¶¶ 11, 15.) Plaintiff Larry Horton, an eighteen year Florida employee of FedEx echoed a similar refrain. (Horton Aff. ¶ 3, 8-9, 11, 13, attached as exhibit C Freeman Aff.)

      The precise amount of time that is at issue for each employee, for each shift, can be

---

[1] As stated by a FedEx manager, FedEx does not permit leaving at the scheduled end time, before the duties are completed, because "[t]here are only a few duties that can be rolled over to the next day." This, of course, would necessarily be true in every FedEx location throughout Florida and nationwide. Thus, "most" employees "always roll over [work beyond the scheduled end time] at least five to ten minutes quite frequently." (Jardini-*Clausnitzer* Aff., ¶ 73, Ex. 24, pp. 363-366.)

513120.2 08000/00888

calculated by comparing the computer record showing scheduled begin and end times with the hard copy time sheet, showing when the employee actually punched in and out.[2] There is no need for individualized proof.

The same budgetary concerns which result in the refusal to pay for work performed before the scheduled start and end times, also cause FedEx employees to work through the unpaid breaks. Again, this can be proven by a comparison of the computer records, which note when breaks are allegedly taken, with the "stop action" data – which documents when specified tasks are performed.[3] It is undisputed that the records to monitor break violations were always available to FedEx. (Jardini-*Clausnitzer* Aff., ¶¶ 178, 180.) But these records were not even reviewed by FedEx management for the purpose of reducing violations, until 2005. (Jardini-*Clausnitzer* Aff., ¶ 175.)

FedEx hourly employees have testified: "I would be told to use codes for time that I would not be paid for, even though I was really doing work. For example, I would be told to use a lunch code, even though I did not really take lunch"; "Due to inadequate time that was allotted to complete my daily tasks, I would often work through breaks for which I was not paid"; "I am frequently required to work through breaks for which I am not compensated"; and "I frequently worked through my breaks, and I know the same was true for other couriers." FedEx managers admitted that he knew couriers and service agents worked on their breaks. (Jardini-*Clausnitzer* Aff., ¶¶ 171, 173.) The universality of violations throughout Florida, as proven by the documentary record, combined with the fact that FedEx centralizes all control over employee

---

[2] The initial sample of records analyzed by Dr. Drogin in the *Clausnitzer* case indicate an unpaid average, per shift, for every employee, of 8.1 minutes. (Jardini-*Clausnitzer* Aff., ¶ 231.) In *Foster v. FedEx*, the data analyzed demonstrated unpaid time 97% of the time, and under one analysis based on random sampling, the average amount of unpaid time was 16.51 minutes, per shift, for every employee. (Jardini-*Clausnitzer* Aff., ¶¶ 90, 91, 112.)

[3] Dr. Drogin, in the *Clausnitzer* case, documented more than 100,000 breaks per month which contain work events; 564,428 unpaid breaks were found to have work events within them. (Jardini-*Clausnitzer* Aff., ¶ 236.) Similarly, in *Foster*, Dr. Drogin, analyzed 13 million records concerning each shift worked by a class member from October 15, 1998 through November 2005; 128 million records identifying each task recorded; and 187 million records identifying the "stop" times for pick up and deliveries. There were almost 1.2 million work events by *Foster v. FedEx* class members over that period during the unpaid breaks. The total number of unpaid breaks in which employee work activity occurred is 690,903 — representing 23% of all breaks analyzed. Therefore, almost one in every four unpaid breaks was worked by a FedEx employee. (Jardini-*Clausnitzer* Aff., ¶¶ 151-213.)

policies and procedures from its headquarters in Memphis, permits little, if any, localized autonomy.  This provides sufficient evidence that FedEx employees throughout Florida have all had the same experience.

**C.**     **Typicality**:  The typicality requirement attempts to insure that the representative party's interests are substantially aligned with those of the absent class members, and is satisfied if the representative claims arise from the same events, practice, or conduct and are based on the same legal theory, as those of other class members.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  A class representative's claims meet the typicality requirement if they are reasonably coextensive with those of the class even if the facts and legal theories are not identical.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-1020 (9th Cir. 1998).This Court held in *Clausnitzer* that a proposed nationwide class met the typicality requirement, noting that the "district court should 'focus on whether named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Clausnitzer, supra* 248 F.R.D. at 656, citing *Appleyard v. Wallace*, 754 F.2d 955,958 (11th Cir. 1985).  This Court further noted that "[a]s is the case with commonality, the requirements for typicality are not high." *Clausnitzer, supra* 248 F.R.D. at 657, citing *Collins v. Int'l Dairy Queen, Inc.* 168 F.R.D. 668, 673-74 (M.D. Ga. 1996). The claims of this Florida class are typical because all potential class members were subject to the same company policies of paying employees from the scheduled start and end times, instead of from the actual times the employees clocked in and out.

**D.**     **The Named Plaintiffs Will Adequately Represent the Class**:  Adequacy of representation under Rule 23(a)(4) involves two elements:  (1) that the representative party's attorney be qualified, experienced, and generally able to conduct the litigation; and (2) that the suit not be collusive and that the representative plaintiffs' interests not be antagonistic to those of the remainder of the class.  *See Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978).  The test is whether the named plaintiff has interests that conflict with, or are antagonistic to the interests of other class members.  *Mayfield v. Dalton*, 109 F.3d 1423, 1427 (9th Cir. 1997).  No such conflict of interest exists here.  All named plaintiffs have an interest in showing that FedEx policies and procedures extract unpaid labor from its hourly employees, which can be documented.  The firms representing plaintiffs, moreover, are experienced in employment class action litigation and have vigorously pursued the rights of FedEx hourly employees in other class action contexts.  (Jardini-*Clausnitzer* Aff., ¶¶ 237.)

## V.     RULE 23(b) IS SATISFIED

Once the four requirements of 23(a) have been met, the Court must determine whether the case meets any of the three requirements of Rule 23(b).  Rule 23(b) provides that an action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and in addition, if the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the defendant (Rule 23(b)(1)); or if questions of law or fact common to the members of the class **predominate** over any questions affecting only individual members, and that a class action is **superior to** other available methods for the fair and efficient adjudication of the controversy.  (Rule 23(b)(3).)  Here, the risk of inconsistent adjudications is apparent, as is the danger of establishing incompatible standards for FedEx.  As such, Rule 23(b)(1) is satisfied, which is sufficient.

The matters pertinent to the Rule 23(b)(3) findings include:  (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, the class members have no interest in individual control and, indeed, taking an aggressive adversarial stand in litigation against one's employer is rarely a good career move. The litigation here has already progressed to a significant degree, particularly when considering the years of discovery in the California action.  Concentrating claims in one forum benefits all parties – including FedEx.  Rule 23(b)(3) actions are "intended to achieve economies of time, expense and effort without sacrificing procedural fairness or other undesirable results." *Grillasca, supra,* 2007 WL 2121726 at 4, *citing In Re Dennie Greenman Sec. Liti.*, 829 F.2d 1539, 1544 (11th Cir. 1987.)

1.     **Class Issues Predominate**:  That common questions of law or fact predominate over individualized questions means that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir.1989) (*quoting Nichols v. Mobile Bd. of Realtors, Inc.*, 675 F.2d 671, 676

(5th Cir. Unit B 1982)).  In the recent Florida case of *Grillasca v. Hess Corporation, supra,* the Court found that that Rule 23(b)(3) was satisfied for a class of plaintiffs where defendant Gas Station allegedly charged excessive pre-authorization requests to plaintiffs' credit cards resulting in bank holds placed on their accounts, thereby limiting plaintiffs' access to their funds.  The court noted:

> For one, the substantive elements of class members' claims require the same proof for each class member.  *Anderson v. Bank of the South, N.A.* 118 F.R.D. 136, 150 (M.D. Fla. 1987.) (common elements of plaintiff's claims involved proof of defendant's fraudulent scheme).  All class members share a common interest, to establish that HESS's practice of requesting pre-authorization holds on customers' accounts without notice is unlawful… Secondly, The proposed class is also bound together by a mutual interest in resolving common questions, more than insisting on their own individual interests.  Additionally, because individual claims against HESS would be too expensive and impractical to pursue, the resolution of the issue common to the class, under a class action suit, would significantly advance litigation. (*Id.* at 14, 15)

Similarly here, the "same proof" is required as to each class member throughout Florida, and readily available, electronically stored data provides the principle source of proof, supplemented by the deposition testimony and other evidence obtained through discovery in previous actions. [4]  The proposed class has a mutual interest in ensuring that all time worked is paid for, and the individual interest in getting paid is wholly aligned with the mutual interest.

Further, <u>common issues constitute the most significant part of each class member's case.</u> The resolution of whether failure to pay for time worked is a breach of contract; whether plaintiffs are entitled to relief under *quantum meruit*, and whether FedEx has a companywide policy of accepting unpaid labor from its work force, would significantly advance the litigation, leaving only the fashioning of a fair method of distribution of damages.  As such, the common issues constitute the most significant part of each class member's individual case and are central

---

[4] The electronic data establishes not only liability, but provides a statistically reliable measure of total damages, which can be established through a daily average of unpaid time or a proportionate sharing model, based on length of time of employment in a class eligible position. As in the California case, the formula was, once programmed, easily administered.  Having already been successfully administered once, the protocol will be even easier to administer here.

513120.2  08000/00888

to all of the member's claims. Courts generally find the predominance standard to be satisfied, even where individual damages issues remain. *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 40 (1st Cir. 2003). Here, the same theory of liability is asserted by all class members, and the same defenses are raised by FedEx against all class members. There can be no serious dispute: class issues predominate in this case.

As aptly noted by the *Grillasca* court, "courts generally agree that the predominance of common issues does not mean that common issues merely outnumber individual issues... courts must engage in qualitative rather than quantitative analysis to ascertain whether predominance requirement is satisfied." *Id. citing Buford v. H & R Bloch, Inc.* 168 F.R.D. 340, 356 (S.D. Ga. 1996). In *Grillasca,* although individual damages issues remained, the Court found that "common questions shared by all members considerably predominate over individual questions of liability" thereby satisfying Rule 23(b)(3) was satisfied. *Id. citing CV Reit, Inc. v. Levy*, 144 F.R.D. 699.

In prior litigation, FedEx has relied upon an unpublished trial court decision in *Cornn v. United Parcel Service, Inc.* No. C03-2001, 2005 WL 2072091 (N.D. Cal. Aug. 26, 2005.) *Cornn* is readily distinguishable from the instant case in that *Cornn* does not address breach of contract or quantum meruit claims, and accordingly is not dispositive of the present case under Florida law. In this case, FedEx's own records showing employee work tasks taking place during employee break periods serve as actual evidence that plaintiffs have worked during unpaid breaks, so no individualized proof is necessary. Further, certain pertinent Federal law, not considered by the *Cornn* court, requires that employees be paid from the time they punch in and are "required to be on duty or to be on the employer's premises." 29 C.F.R. § 4.178. FedEx timecards and electronic data also provide sufficient proof of these facts, again alleviating the need for individualized proof.

      2.    **The Class Action Is Superior To Individual Actions**: Superiority is determined by comparing the efficiency and fairness of available methods of adjudicating the matter, considering: (a) the interests of individual class members in controlling their own, separate litigation; (b) the nature and extent of any relevant, pending litigation brought by or against members of the class; (c) the desirability of concentrating the litigation in the particular forum; and (d) any management difficulties that class action is likely to present. *Moore's Federal Practice*, section 23.45[2][a].

The First Circuit Court of Appeal, in *Ouellette v. Wal-Mart Stores, Inc.*888 So.2d 90, 91 (Fla. 1st DCA 2004), recently rejected Wal-Mart's argument that the individualized nature of the plaintiffs' damage claims barred class certification.  The *Ouellette* plaintiffs plead claims for breach of contract, quantum meruit and unjust enrichment, alleging that Wal-Mart required them to work "off the clock" and failed to pay for all time worked, including meal and rest break violations.  The *Ouellette* court relied upon the 11th Circuit Court of Appeal's opinion in *Klay v. Humana, Inc.*382 F.3d 1241, 1259, 1273 (11th Cir. 2004), which described the various management tools available to trial courts to address individualized damages issues in class action suits, including: "(1)bifurcating liability and damages trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they  may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class."

In this case, there is no benefit at all to any individual in controlling the litigation, because the class will establish liability and a fair method of determining the wages owed to each individual.  Further, in this case, the class members' individual damages are not such that the claim could be economically pursued individually, particularly given the aggressive defense funded by the vast resources of FedEx, so greatly unequal to the resources available to their hourly employees.  In the absence of the class procedure, justice could never be done.

Given the nature of the wrong, the claims of each class member are identical in terms of liability.   Individual members do not need to tailor litigation tactics to individual circumstances, since the circumstances of each claim are the same.  Nor does there appear to be any related litigation that class members have already commenced.

Further, this class has certainly benefited from the discovery and investigation conducted in California, and nationwide, and there is no discernible benefit to forcing individual employees to file separate lawsuits against their employer.  The fear of retaliation against employees who take it upon themselves to sue is an overwhelming disincentive.  For any individual, the claimed damages fall into the range of $1,200 to $6,875, a considerable amount to a working person but not enough to justify litigation which could cost ten to a hundred times the expected recovery for an individual and would jeopardize the jobs of every litigant.

A single forum for all claims is particularly appropriate where the claims of all class

members turn on virtually identical facts and law. *Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995), reversed on other grounds, 516 U.S. 367 (1996), cited in Moore's Federal Practice, 3d Ed., section 23.46[2][d]. As for case management, this case does not pose any unusual difficulties. Indeed, given the fact that the pertinent evidence is electronically stored, and the model for analyzing the data has already been structured in the California litigation, this case will be one of the easier class actions to administer, despite the number of class members.

Since the class members are former and present employees, (as opposed, for example, to an unidentified class of consumers of a product) communication with the class is relatively easy as defendant has access to the names and address (or last known addresses) of each class member.

## VI.   CONCLUSION

Based upon the above, the court should grant the within motion for class certification. Plaintiffs also request that the Court grant additional time to conduct discovery.

Dated: August 14, 2008

Respectfully submitted,

By: _____
     André E. Jardini
     Gwen Freeman
     KNAPP, PETERSEN & CLARKE
     500 N. Brand Boulevard, 20th Floor
     Glendale, CA 91203-1904
     Telephone: (818) 547-5000
     Facsimile: (818) 547-5329
     Email: aej@kpclegal.com
     Email: gf@kpclegal.com

     Attorneys for Plaintiffs Ronald Clausnitzer,
     Anthony W. Bost, Gerald Freeman, Patricia
     Kennedy, James Marciano, Fred Ortiz,
     Sandra Tims, and Elizabeth Tucker, and all
     others similarly situated

513120.2  08000/00888

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was sent, as indicated, this 15th day of August, 2008 to:

Sandra C. Isom, Esq.
Richard S. McConnell, Esq.
FEDERAL EXPRESS CORPORATION
3620 Hacks Cross Road, Bldg. B, 3rd Floor
Memphis, Tennessee 38125
Tel: (901) 434-8600
Fax: (901) 434-9271
Email: scisom@fedex.com;
richard.mcconnell@fedex.com
msmelton@fedex.com
(Via Federal Express)
Attorneys for Defendant, Federal Express Corporation

Aaron Reed, Esq.
LITTLER MENDELSON, P.C.
One Biscayne Tower, Suite 1500
2 South Biscayne Blvd.
Miami, Florida, 33131
Tel: (305) 400-7500
Fax: (305) 603-2552
Email:

lplangbein@fedex.com
(Via Federal Express)

By: _____

Michael S. Duberchin
LAW OFFICES OF MICHAEL
  S. DUBERCHIN
500 North Brand Boulevard, 20th Floor
Glendale, CA 91203
Telephone  (818) 246-8487
Facsimile: (818) 246-6277
Email: msdlaw@earthlink.net
(Via U.S. Mail)

André E. Jardini, Esq.
Gwen Freeman, Esq.
KNAPP, PETERSEN & CLARKE
500 North Brand Boulevard, 20th Floor
Glendale, CA 91203-1904
Telephone: (818) 547-5000
Facsimile: (818) 547-5319
Email: aej@kpclegal.com
Email: gf@kpclegal.com

Glen Robert Bregman
LAW OFFICES OF
NUSSBAUM &
ROBERT BREGMAN
16633 Ventura Blvd., Ste. 1240
Encino, CA 91436
Tel: (818) 981-9793
Fax: (818) 981-9807
Email: glenbregmanlaw@aol.com
(Via U.S. Mail)

Marshall Dore Louis
SINCLAIR, LOUIS, HEATH,

ZAVERTNIK, P.A.
169 East Flagler Street, Suite 1125
Miami, Florida 33131
Tel: (305) 374-0544
Fax: (305) 381-6869
Email: mdl@sinclairlouis.com
(Via U.S. Mail)

Attorneys for Plaintiffs PAUL BABINEAU, KENNY BOSELY, LARRY HORTON, DUANE JOYCE, individuals, on behalf of themselves and all others similarly situated

589912 08000\00888\pld